ISAAC GOLDFINGER, Respondent, *v.* PHILIP FEINTUCH, as President of Butcher Union Local No. 174, Appellant.

282

■■■■■■■■■■■■

Argued October 12, 1937; decided December 7, 1937.

■■■■■■■■■■■■

*William Karlin* and *Leo Greenfield* for appellant. The trial court's findings of fact were amply justified by the evidence and should not have been reversed by the Appellate Division. The Court of Appeals has jurisdiction to review the facts and should reinstate the findings of fact as made by the trial court. (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260; *Boyd* v. *Boyd,* 252 N. Y. 422.) The Appellate Division erred in reversing the Special Term upon the law. The activities of the defendant did not constitute an unlawful secondary boycott subject to injunctive restraint. (*Auburn Draying Co.* v. *Wardell,* 227 N. Y. 1; *Public Baking Co.* v. *Stern,* 127 Misc. Rep. 229; 216 App, Div. 831; *Engelmeyer* v. *Simon,* 148 Misc. Rep. 621; *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260; *Bossert* v. *Dhuy,* 221 N. Y. 342; *Paine Lumber Co.* v. *Neal,* 244 U. S. 459; *Stillwell Theatre, Inc.,* v. *Kaplan,* 259 N. Y. 405; *Spanier Window Cleaning Co.* v. *Awerkin,* 225 App. Div. 735; *Tri-Boro Window Cleaning Co.* v. *Krat,* 241 App. Div. 799; *New York Lumber Trade Assn.* v. *Lacey,* 245 App. Div. 262.) The activities of the defendant were lawful and justifiable. (*Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260; *Blumenthal* v. *Weikman,* 154 Misc. Rep. 684; *National Protection*

*Assn.* v. *Cumming,* 170 N. Y. 315; *Sherman* v. *Abeles,* 265 N. Y. 383.) Plaintiff must be denied injunctive relief under section 876-a of the Civil Practice Act. (*Aberdeen Restaurant Corp.* v. *Gottfried,* 158 Misc. Rep. 785; *Levering & Garrigues Co.* v. *Morrin,* 71 Fed. Rep. [2d] 284; *Cinderella Theatre Co.* v. *Sign Writers Local Union,* 6 Fed. Supp. 164; *Stanley* v. *Peabody Coal Co.,* 5 Fed. Supp. 612.)

*Alfred B. Nathan* and *Benjamin Lewis* for respondent. Appellant's threats to plaintiff, its interference with his business and the picketing of his. store, even in the absence of actual force and violence, were necessarily coercive in effect, and constituted a wrongful interference with plaintiff's property rights, and, therefore, an illegal secondary boycott. Hence, plaintiff was entitled to injunctive relief restraining the defendant union from picketing his premises and otherwise interfering with his business. (*Auburn Draying Co.* v. *Wardell,* 227 N. Y. 1; *Dorchy* v. *Kansas,* 272 U. S. 306; *Truax* v. *Corrigan,* 257 U. S. 312; *Duplex Printing Press Co.* v. *Deering,* 254 U. S. 443; *Exchange Bakery & Restaurant, Inc.,* v. *Rifkin,* 245 N. Y. 260; *Bossert* v. *Dhuy,* 221 N. Y. 342; *J. H. & S. Theatres* v. *Fay,* 260 N. Y. 315; *Wise Shoe Co.* v. *Lowenthal,* 266 N. Y. 264; *Remington Rand, Inc.,* v. *Crofoot,* 248 App. Div. 356; *Grandview Dairy, Inc.,* v. *O'Leary,* 158 Misc. Rep. 791; *Stuhmer & Co.* v. *Korman,* 241 App. Div. 702; 265 N. Y. 481; *Commercial House & Window Cleaning Co.* v. *Awerkin,* 226 App. Div. 734; *National House Cleaning Contractors, Inc.,* v. *Bobaluc,* 243 App. Div. 699; *Gertz, Inc.,* v. *Randau,* 162 Misc. Rep. 786; *Pacific Typesetting Co.* v. *Typo. Union,* 125 Wash. 273.) The action does not involve a labor dispute within the meaning of subdivision 10 of section 876-a of the Civil Practice Act, and plaintiff, therefore, was not required to establish compliance with the requirements of the statute. (*Thompson* v. *Boekhout,* 249 App. Div. 77; 273 N. Y. 390; *La Rose* v. *Possehl,* 156

Misc. Rep. 476; *United Elec. Coal Co.* v. *Rice*, 80 Fed. Rep. [2d] 1; 297 U. S. 714; *Lauf* v. *Shinner & Co.*, 82 Fed. Rep. [2d] 68; *Scavenger Service Corp.* v. *Courtney*, 85 Fed. Rep. [2d] 825; *Duplex Printing Press Co.* v. *Deering*, 254 U. S. 443; *American Steel Foundries* v. *Tri-City C. T. Council*, 257 U. S. 184; *American Gas Stations, Inc.*, v. *" John Doe,"* 250 App. Div. 227; *Scharf* v. *" John Doe,"* 247 App. Div. 882; *Remington Rand, Inc.*, v. *Crofoot*, 248 App. Div. 356; *Grandview Dairy, Inc.*, v. *O'Leary*, 158 Misc. Rep. 791.)

FINCH, J. W. & I. Blumenthal manufacture kosher meat products which are sold under the name of " Ukor." The "Ukor" products are the only non-union-made kosher provisions sold in the city of New York, and the salaries paid by this company range from fifty to seventy-five cents an hour as compared with the union scale of ninety-five cents to one dollar and twenty-five cents an hour. The defendant Butcher Union Local No. 174 endeavored to obtain a union agreement from the manufacturer of Ukor products. When these efforts were unsuccessful the defendant decided to picket the *non-union-made products* at the retail stores. Among the stores picketed was that of the plaintiff, a dealer in kosher meat products. The defendant placed pickets, sometimes one, sometimes two, in front of the plaintiff's store, carrying signs which bore the inscriptions in English and Yiddish, " This store sells delicatessen that is made in a non-union factory," and " Ukor Provision Company is unfair to Union labor. Please buy Union-made delicatessen only."

The important question in this case is whether, assuming that there has been no violence, force, intimidation, breach of the peace, coercion, fraud, or unlawful threat, the act of the defendant in thus picketing the delicatessen store of the plaintiff is legal.

Before coming to this primary question, however, it is necessary for us to ascertain whether there have been other unlawful acts sufficient to justify the injunction

issued by the Appellate Division. Upon this record many of the facts are in dispute. It is undisputed that the defendant union appointed a committee consisting of about fifty of its members to carry out the plan of picketing the retail stores where the non-union product was sold. Members of the committee called on the plaintiff. Both Special Term and the Appellate Division have found that this committee threatened the plaintiff that unless he discontinued the sale of Ukor products they would picket and importune customers to cease purchasing such products. There is also evidence that they said that unless he discontinued the sale of the *non-union products* " We are going to picket you, we are going to ruin you." The plaintiff testified that customers were begged not to buy, and those who made purchases were cursed. Another witness testified that on two occasions he heard a picket ask passers-by not to purchase " scab merchandise." The police were called and the evidence is in dispute as to whether they admonished the pickets or the storekeeper, but, in any event, the situation remained unchanged. In addition there is evidence that the sales of the plaintiff from his little store, which has been in the vicinity for eight years, have fallen $100 per week, which is a very substantial portion of the total weekly sales and might well constitute irreparable damage to this plaintiff.

As between an employer and an employee the right of a union to picket peacefully is generally conceded. Its purpose must be to persuade, not to intimidate. So long as the pleas of both employer and employee are lawful the courts have not been constituted arbiters of the fairness, justice or wisdom of the terms demanded by either the employer or employees. (*J. H. & S. Theatres, Inc.,* v. *Fay,* 260 N. Y. 315.) It is only where unlawful acts have been committed that the courts intervene to redress or prevent manifest abuse of the right to picket peacefully with a limited number of pickets.

(*Nann* v. *Raimist*, 255 N. Y. 307.) Picketing is not peaceful where a large crowd gathers in mass formation or there is shouting or the use of loud speakers in front of a picketed place of business, or the sidewalk or entrance is obstructed by parading around in a circle or lying on the sidewalk. Such actions are illegal, and are merely a form of intimidation. Likewise it is illegal to picket the place of business of one who is not himself a party to an industrial dispute to persuade the public to withdraw its patronage generally from the business for the purpose of coercing the owner to take sides in a controversy in which he has no interest. Nor is it legal to threaten to ruin the custom and trade generally or to accost or interfere with customers at the entrance to the store. Disorderly conduct, force, violence or intimidation by pickets should be sternly suppressed by the police and administrative authorities.

Within the limits of peaceful picketing, however, picketing may be carried on not only against the manufacturer but against a *non-union product* sold by one in unity of interest with the manufacturer who is in the same business for profit. Where a manufacturer pays less than union wages both it and the retailers who sell its products are in a position to undersell competitors who pay the higher scale, and this may result in unfair reduction of the wages of union members. Concededly the defendant union would be entitled to picket peacefully the plant of the manufacturer. Where the manufacturer disposes of the product through retailers in unity of interest with it, unless the union may follow the product to the place where it is sold and peacefully ask the public to refrain from purchasing it, the union would be deprived of a fair and proper means of bringing its plea to the attention of the public.

An analogous principle has been applied by this court in *Bossert* v. *Dhuy* (221 N. Y. 342); *Willson & Adams Co.* v. *Pearce* (264 N. Y. 521, affg. 240 App. Div. 718); and in *New York Lumber Trade Assn.* v. *Lacey* (269 N. Y.

595). The cases of *Auburn Draying Co.* v. *Wardell* (227 N. Y. 1) and *Stuhmer & Co.* v. *Korman* (241 App. Div. 702; affd., 265 N. Y. 481) are not in point. In the *Wardell* case all union members in the city of Auburn, regardless of industry, threatened to withdraw their patronage from any one who dealt with the plaintiff because it refused to require its employees to join a union. In the *Stuhmer* case the pickets made false statements, obstructed the sidewalks, created disturbances and were guilty of other unlawful conduct which so permeated all the picketing that an injunction would have been warranted whether the picketing was at the store of a retailer or that of the non-union manufacturer.]

We do not hold more than that where a retailer is in unity of interest with the manufacturer, the union may follow the *non-union goods* and seek by peaceful picketing to persuade the consuming public to refrain from purchasing the *non-union product*, whether that is at the plant of the manufacturer or at the store of the retailer in the same line of business and in unity of interest with the manufacturer. Such storekeeper may be, as in the case at bar, the sole person required to man his business. If Goldfinger, the delicatessen dealer, had employed any help, legally they could strike or refuse to work for him so long as he sold Ukor products. We have so held in *Bossert* v. *Dhuy* (*supra*). Such employees, having the right to refuse to work for the plaintiff, would likewise have the right to inform the public why they refused to work for the plaintiff. In this respect at least it has been settled that labor may aid its cause. If a union may request its members not to work upon or with materials bought from a non-union shop or call a strike for such reasons, it is difficult to see why, under the law of this State, it may not peacefully state the grievance by placards similar to those used here. In other words, it may, in a proper manner and in a peaceful way, ask the public to refrain from purchasing *products made*

*by non-union labor* and state where the same are sold. The holding by this court that where a shopkeeper is the sole person required to run his business he is, therefore, not subject to picketing by a union which seeks to compel him to employ union labor (*Luft* v. *Flove*, 270 N. Y. 640; *Thompson* v. *Boekhout*, 273 N. Y. 390), is not authority to prevent peaceful picketing for the purposes in the case at bar. Here, the purpose is legal. There, it was unlawful.

We are thus brought to a consideration of the recently-enacted statute applicable to the issuance of injunctions in labor disputes (Civ. Prac. Act, § 876-a; Laws of 1935, ch. 477). This provides in brief that no injunction shall issue in a labor dispute in the absence of certain enumerated findings which have been found on disputed evidence in the case at bar. Also that the relief granted shall not prohibit certain acts including (subd. 1, par. 5) " Giving publicity to and obtaining or communicating information regarding the existence of, or the facts involved in, any dispute, whether by advertising, speaking, picketing, patrolling any public street or any place where any person or persons may lawfully be, or by any other method not involving fraud, violence or breach of the peace."

Whether this statute is merely an expression or an extension of the principles of the common law and equity as applied to labor injunctions and stated in the opinions of this court, need not now be considered. The constitutionality under the Fourteenth Amendment of the United States Constitution of the portions of the statute herein applicable does not seem in doubt. In *Senn* v. *Tile Layers Protective Union* (301 U. S. 468) the United States Supreme Court upheld a similar statute, at least in so far as it authorizes peaceful picketing and truthful publicity, the court stating that no one has a " constitutional right to a ' remedy ' against the lawful conduct of another " (p. 483). (See, also, the State cases cited in note, 46 Yale

Law Journal, p. 1064, and on the question of equal protection of the laws, *Jones* v. *Union Guano Co.*, 264 U. S. 171.) The case of *Truax* v. *Corrigan* (257 U. S. 312) was distinguished as involving libelous attacks, abusive epithets, threats and intimidation.

Nor can the plaintiff successfully contend that these portions of the statute herein involved violate the Constitution of New York State. (*Matter of Stilwell*, 139 N. Y. 337; *People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429; *Matter of Brock*, 245 App. Div. 5. See *Matter of Berkovitz* v. *Arbib & Houlberg, Inc.*, 230 N. Y. 261, 274. Cf. *Colson* v. *Pelgram*, 259 N. Y. 370.)

It is urged, however, that section 876-a was never intended to apply to the conduct involved herein; that this case does not involve a " labor dispute " within the meaning of that term as used in the statute. Subdivision 10 of that section defines labor dispute. Pertinent portions thereof provide: " A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft or occupation  *  *  *  when the case involves any conflicting or competing interests in a ' labor dispute ' (as hereinafter defined) of ' persons participating or interested ' therein (as hereinafter defined)." (par. a.) The term " labor dispute " is then defined as " any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the relation of employer and employee." (par. c.) In view of this definition it cannot be contended that the case at bar does not involve a labor dispute under section 876-a. Controversy has arisen out of an attempt by the defendant

to represent the employees of W. & I. Blumenthal in fixing the terms or conditions of employment. W. & I. Blumenthal, the defendant union, and the plaintiff are all engaged in the same industry. The only ground that could be advanced for contending that the statute is not applicable is that the plaintiff is not the employer of the men whom the defendant seeks to represent; but the statute expressly provides that it is applicable to parties in the same industry, " regardless of whether or not the disputants stand in the relation of employer and employee."

The judgment should be modified in accordance with this opinion, and as so modified affirmed, without costs.

LEHMAN, J. (concurring in part). I agree that peaceful picketing of the plaintiff's place of business by the defendant union for the purpose of inducing the plaintiff's customers to refrain from buying non-union products of a manufacturer, which are on sale by the plaintiff, is lawful. That is not a " secondary boycott." For that reason the judgment of the Appellate Division should be modified, if not reversed. I agree, too, that the union would be acting unlawfully if it picketed the plaintiff's place of business in manner calculated to impede or intimidate customers of the plaintiff, or if the union attempted to coerce the plaintiff by other unlawful acts or by threat of injury to his business, except as such injury might result from the use, by the union, of lawful means to achieve a lawful end. (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260.) A majority of this court are of the opinion that the plaintiff is entitled to an injunction, at least against such unlawful acts and threats. I do not agree with that conclusion because, in my opinion, the weight of the evidence sustains the findings of the trial judge that here there were no such wrongs.

The trial court found, after hearing and seeing witnesses, that the picketing was conducted by the defendant union

in a peaceful and orderly manner without threats, intimidation, force or violence either against plaintiff or his customers. The Appellate Division has based the contrary finding of violence and intimidation upon evidence given by the plaintiff and a photographer, employed by the plaintiff to take photographs of the picketing. It is undisputed that on week days there was only one picket in front of the plaintiff's store, and on Saturdays two pickets. The testimony as to threats, violence or disorder upon a few occasions, usually not identified, is vague, consists largely of conclusions, and is contradicted by those accused of wrongdoings. No customer is produced by the plaintiff and no police officer.

Disorderly conduct, force, violence or intimidation by pickets should be sternly suppressed by the police. In this case a majority of the Appellate Division, disregarding the evidence of the witnesses produced by the defendant, and disregarding the findings of the trial judge who heard these witnesses, has chosen to believe the vague and unsatisfactory testimony given by the plaintiff, and to base finding of threats and intimidation upon that evidence. I can find no basis for the conclusion of the Appellate Division that the findings of the trial judge are against the weight of evidence.

The judgment of the Appellate Division should be reversed and the judgment of Special Term affirmed.

RIPPEY, J. (concurring in part). I concur in the result reached solely upon the ground that the trial court found upon sufficient evidence that there was complete unity of interest between the plaintiff and the manufacturer. Except for the finding of unity of interest, the facts would establish a secondary boycott and would be illegal. I cannot agree that the plaintiff and the manufacturer were engaged in the same trade or industry. There is no finding of fact to that effect nor is there any evidence upon which such a fact could be found.

HUBBS, J. (dissenting). I dissent and vote to affirm upon the ground that even if defendant could generally, by publicity, urge people not to purchase the Ukor products, that does not permit the defendant to say to a dealer who does not employ help that they will ruin him and his business and to carry out that threat by picketing his place of business. That is a secondary boycott and I think it is illegal and against public policy.

Our decisions are open and we should take the position that other courts have taken and so hold.

CRANE, Ch. J., concurs with FINCH, J.; LEHMAN and LOUGHRAN, JJ., concur, except as to the weight of evidence, as stated in a memorandum by LEHMAN, J.; O'BRIEN, J., concurs in result on the authority of *Wise Shoe Co.* v. *Lowenthal* (266 N. Y. 264); RIPPEY, J., concurs in result in separate memorandum; HUBBS, J., dissents and votes to affirm in memorandum.

Judgment accordingly.