JACK SEGAL, Trading Under the Name of PLANNED ENTERTAINMENT PRODUCTIONS, Plaintiff, *v.* MATT SHELVEY, as Chief Executive Officer of American Guild of Variety Artists, an Unincorporated Association, et al., Defendants.

Supreme Court, Special Term, New York County, August 7, 1947.

552

*Louis Engelberg* for plaintiff.

*Jonas T. Silverstone* for defendants.

LUMBARD, J. Plaintiff moves for an injunction *pendente lite* restraining the defendants from indulging in any course of conduct which tends to interfere with plaintiff's rights under his agreement with certain hotels, and from inducing breaches of that contract. The defendants assert that the acts complained of arise out of a labor dispute and that section 876-a of the Civil Practice Act bars this relief to the plaintiff, and further that there is no such clear showing in the affidavits before the court to justify the granting of a temporary injunction.

The plaintiff has been in the business of agent for booking theatrical talent since 1944, which talent consists largely of members of the American Guild of Variety Artists (AGVA), who perform at summer hotel resorts in the Catskill Mountains. He is bound by the terms prescribed in a franchise issued to him by AGVA on his application therefor. Similarly, the hotels involved in this application are bound by their respective agreements with AGVA to lodge all their performers within a radius of five miles from the place of their engagements. Plainly, this provision was designed to improve working conditions of these actors.

The plaintiff by contract receives a flat sum per week or season from the hotel operators, in return for which he agrees to furnish what might be called a " package " of entertainment. Plaintiff thereupon engages the performers at a figure agreed upon between himself and them, retaining the net balance for himself; he does not, in most cases, receive a booking commission for obtaining the employment.

The plaintiff conceived the idea of renting a hotel in the Catskill Mountain area to house the performers he engaged for his various clients. It is conceded that the performers concerned here played at hotels more than five miles distant in radius. The lodging of these performers at plaintiff's hotel was a clear violation of the hotel owners' agreement with AGVA, and in turn, of plaintiff's agreement with AGVA.

Plaintiff contends that the hotel operators offered rooms and board to their performers, as required by their contract, but that they preferred to stay at plaintiff's hotel, located more than five miles from the scene of their engagements. The union, however, disputes this, terming the offer a " token ", and charges the plaintiff with employee-domination, and unfair labor practices in that the hotel operators and plaintiff were in league to violate and break AGVA's contract.

Five hotels dealing with plaintiff were placed on the " National Unfair List " by AGVA for breach of the agreement. Since the bringing on of this application, these hotels were removed from the blacklist, thus eliminating that phase of the motion.

The time spent in traveling to and from the place where these services of the actors are to be performed and the conditions under which they must live away from their own homes, are working conditions or " conditions of employment ", and are the proper concern of labor unions organized to protect the manifest interests of their members. Any controversy as to such conditions is clearly a " labor dispute " within the meaning of section 876-a of the Civil Practice Act which prohibits labor injunctions in such cases without a hearing upon adequate notice and full opportunity for examination and cross-examination of witnesses, and then only after the court has made certain findings as set forth in subdivision 1 of section 876-a.

None of the conditions laid down by the statute for the issuance of an injunction in such a dispute is met by the plaintiff. Only if the court could say that this controversy involves no labor dispute within the meaning of section 876-a could the court proceed to consider whether an injunction

should be granted. Our courts have jealously guarded the purpose and intent of the Legislature in outlawing injunctions in labor disputes (*Goldfinger* v. *Feintuch,* 276 N. Y. 281). In no event should the courts, by straining at the facts or by narrow interpretation of the statute, nullify or whittle away what the Legislature has plainly declared to be the public policy of this State. (Cf. *Schivera* v. *Long Island Lighting Co.,* 296 N. Y. 26, 31.) The Legislature has declared this policy in its enactment of section 876-a by chapter 477 of the Laws of 1935: " The policy of this state is declared as follows: Equity procedure that permits a complaining party to obtain sweeping injunctive relief that is not preceded by or conditioned upon adequate notice to and hearing of the responding party or parties, or that issues after hearing based upon written affidavits alone and not upon examination, confrontation and cross-examination of witnesses in open court, is peculiarly subject to abuse in labor litigations * * * " for reasons which it proceeds to enumerate. The controversy here is a labor dispute; the parties are engaged in the same industry (*Goldfinger* v. *Feintuch, supra*). Section 876-a applies to this case.

Furthermore, the complaint fails to allege, as a condition precedent to securing the relief sought, that the plaintiff has made every reasonable effort to settle the dispute by negotiation or with the aid of any machinery of mediation or arbitration (§ 876-a, subd. 1, par. [f], subpar. [4]).

For the reasons above stated, no injunctive relief may be granted to the plaintiff on the facts of this case.

There is a further reason for the denial of this application. Plaintiff fails to make a clear showing that he is entitled to injunctive relief. Quite to the contrary, the papers present an irreconcilable diversity of facts on many of the main issues. This conflict, in any event, should be determined after a trial.

Motion is denied.