Saul S. Street, J.
Plaintiff does not purchase the products of the defendants’ employer for resale, as was the case in Goldfinger v. Feintuch (276 N. Y. 281) and no case of picketing “ against a non-union product ” (p. 286) is, therefore, involved. Nor does plaintiff use the services of the defendants’ employer, as was the case in People v. Muller (286 N. Y. 281) where the person picketed refused to obtain the services of the union for the maintenance of his burglar alarm system (p. 283). The case appears to be governed by the doctrine of Arden Sales Corp. v. Hawley (176 Misc. 821, affd. 261 App. Div. 953 [First Dept.]); see, also, Canepa v. Doe (277 N. Y. 52). The case of Empire Smokes v. Finch (3 A D 2d 503) is a decision of another department. Furthermore, in that case the employer’s machines were located in the premises which were being picketed and these machines required the services of the employer for their maintenance. No such facts are here involved. The activities of the defendants constitute an illegal secondary boycott (Arden Sales Corp. v. Hawley, supra). No labor dispute within the meaning of section 876-a of the Civil Practice Act is present here (Arden Sales Corp. v. Hawley, supra; see, also, Englander Co. v. Tishler, 280 App. Div. 217 [First Dept.] where the court, in-upholding as legal picketing of a retail store selling the employer’s products, said [p. 218] “ This case therefore falls within section 876-a of the Civil Practice Act ” [italics supplied], thus implying that its conclusion would have been otherwise had the picketing constituted an illegal secondary boycott).
Defendants claim that the doctrine of Federal pre-emption precludes this court from taking jurisdiction of this case. It is true that the employer has filed a complaint with the National Labor Relations Board charging the union with an unfair labor practice under section 8 (subd. [b], par. [4], cl. [A]) of the National Labor Relations Act (U. S. Code, tit. 29, § 158) consisting of allegedly inducing the employees of this plaintiff ‘ ‘ to engage in * * * a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services ”. As pointed out in Carpenters’ Union v. Labor Bd. (357 U. S. 93, 98), in order to make out a violation (par. [4], cl. [A]) “ Employees *736 must be induced; they must be induced to engage in a strike or concerted refusal In National Labor Relations Bd. v. Business Mach, etc., CIO (228 F. 2d 553) the Circuit Court of Appeals for this circuit declared (p. 559) that “ The only thing proscribed by § 8(b)(4) is inducement or encouragement of the employees of the customers ”. The difficulty here is that the present record fails to show any effort by defendants to induce plaintiff’s employees to strike or even to refuse to use, work on or handle any goods, articles, materials or commodities. The signs used by defendant commence with the words “ NOTICE TO THE PUBLIC ” (italics the court’s). One of the affidavits of McDonough, defendants’ president, states that there has been ‘ ‘ no attempt to dissuade any person from going into the buildings picketed * * *. The pickets silently walk to and fro * * * carrying the message to the public indicated by the sign” (italics the court’s). The record clearly indicates that the signs and the picketing are directed at the general public and not at employees of plaintiff. In these circumstances, no violation of section 8 (subd. [b], par. [4], cl. [A]) is shown to exist. The mere filing of a complaint by the employer cannot give the National Labor Eelations Board jurisdiction if the facts do not establish an unfair labor practice under the Federal act. In Pleasant Val. Packing Co. v. Talarico (5 N Y 2d 40), the court said (p. 46): “ The picketing conducted by the defendant union does not fall within the foregoing definition of an unfair labor practice under the Federal statute ” and it accordingly held that the State courts were not deprived of jurisdiction to act. Chief Judge Conway, writing for the court used the following pertinent language (pp. 47-48): “If we rule against jurisdiction and we are wrong in so ruling, the unsuccessful litigant may well be irreparably harmed. We are of the mind that any doubt should be ■resolved in favor of jurisdiction, leaving it to the Supreme Court to finally resolve the matter ”. The wisdom of this view is illustrated here by the fact that the attorney representing defendants, in a controversy involving a different union, succeeded in obtaining dismissal of the petition in that case on the ground that “ there is no evidence that the pickets who carried these signs spoke to any employees * * * or urged them to stop work or engage in a concerted refusal to work upon the products of the Dictaphone Corporation ”. Were this court to hold that the doctrine of Federal pre-emption is applicable here, it would seem probable that a similar motion to dismiss would be made, by the same attorney, in the Federal forum and *737 that it would be granted, thus leaving plaintiff with no remedy at all.
In view of tbe fact that tbe court bolds that defendants are guilty of an illegal secondary boycott, it is unnecessary to determine tbe issue presented as to tbe misleading character of tbe signs used.
Motion granted. Settle order.